19345

STATE of South Carolina, Appellant-Respondent, v. PILOT LIFE INSURANCE COMPANY, Respondent-Appellant

(186 S. E. (2d) 262)

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Glen E. Craig,* of Columbia, *for Appellant-Respondent,* cite:

*Walter J. Bristow, Jr., Esq.,* of *Marchant, Bristow & Bates,* Columbia, *for Respondent-Appellant,* cites:

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Glen E. Craig,* of Columbia, *for Appellant-Respondent, in Reply,* cite:

January 5, 1972.

*Per Curiam:*

We are satisfied that the Order of the Circuit Court correctly sets forth and disposes of all issues raised in this case. The Order of the Circuit Court shall be reported as the directive of this Court.

## ORDER OF JUDGE RHODES

This action was instituted on December 30, 1968, pursuant to Section 37-127 of the Code of Laws of South Carolina (1962), to recover certain license fees alleged to be due under Sections 37-122 and 37-124 of the Code. Plaintiff also seeks interest and penalties in connection with such license fees. The complaint contains six (6) causes of action, one for each of the years from 1962 through 1967. Defendant filed an amended answer admitting certain paragraphs of the complaint and denying others, and setting up three (3) affirmative defenses.

In order to reduce the issues involved, the plaintiff and the defendant entered into the following stipulation which was submitted to me for decision:

"It is stipulated and agreed that the pleadings raise the following questions under Section 37-123 of the Code and that the below listed facts are true.

"1. Are the bonds described below eligible investments?

"Bowaters Carolina Corporation First Mortgage Bonds, 5.75 percent, Series A, acquired in 1958 and 1959; and 6 percent, Series B, acquired in 1961 and 1962.

"Bowaters Carolina Corporation, hereinafter called Bowaters, is a corporation organized and existing under the laws of Delaware which has domesticated in this State. At all times pertinent to this action Bowaters was owned and controlled by a foreign corporation, to wit: Bowaters Canadian Corporation, a corporation incorporated under the laws of Canada (formerly Bowater Corporation of North America, Limited), or Bowaters United States Corporation of Calhoun, Tennessee. Neither of such corporations has ever domesticated in this State.

"Bowaters' bonds described above were not valid until J. P. Morgan & Co., Incorporated, as Trustee (Morgan Guaranty Trust Company of New York), of New York City, signed the certificate of authentication endorsed on such bonds. The principal of and interest on such bonds are payable at the office or agency of Bowaters in New York City.

"Such bonds are first mortgage bonds. The original Indenture of Mortgage and Deed of Trust securing such bonds was executed by Bowaters to the said Trustee and was recorded in the Office of the Clerk of Court for York County in Mortgage Book 96 at pages 117-325; and in the Office of the Clerk of Court for Lancaster County in Mortgage Book 72 at page 191. The Supplemental Indenture securing such bonds is dated as of July 1, 1960. Counsel for the parties feel that pages 12 through 28 of such original indenture are the pages thereof pertinent to this question and such pages are marked Exhibit A, attached hereto and made a part hereof;

however, copies of the original and supplemental Indentures are offered in evidence and, with the permission of the Court, the same are hereby withdrawn and will be returned upon request of the court.

"Such bonds and Indenture were completed, signed, sealed and delivered in New York; and the proceeds from such bonds were paid to the said Trustee in New York for the benefit of Bowaters.

"2. Is the following an eligible investment?

"Investment in note of Jack W. Nelson and Novie M. Nelson in the principal amount of $200,000 dated March 18, 1959.

"This note is secured under the Collateral Agreement covering the note and first mortgage of real and personal property of El Rancho Corporation to Jack W. Nelson and Novie M. Nelson on real estate in South Carolina. The mortgage is recorded in the office of the Clerk of Court for Horry County in Mortgage Book 273 at page 450. The note of El Rancho Corporation is in the principal amount of $707,-274.04 and is dated October 31, 1956 and the mortgage of El Rancho Corporation is dated December 14, 1956. A copy of such Collateral Agreement dated March 18, 1959, is marked Exhibit B, attached hereto and made a part hereof. Counsel for the parties feel that such Collateral Agreement is the only document which needs to be reviewed by the Court in connection with this question; however copies of the Nelson note, the El Rancho note and the El Rancho mortgage are offered in evidence and, with the permission of the Court, the same are hereby withdrawn and will be returned upon the request of the Court.

"Plaintiff acknowledges that it is immaterial that the written obligation of Jack W. Nelson and Novie M. Nelson is described as a note instead of a bond. Plaintiff also acknowledges that the fact that an insurer bought or purchased a note secured by a real estate mortgage from the original payee and mortgagee, instead of being the original payee

and mortgagee, would not preclude the investment from being an eligible investment under Section 37-123.

"El Rancho Corporation is a corporation organized and existing under the laws of Delaware which has never domesticated in this State.

"Such note of Jack W. Nelson and Novie M. Nelson was described by Defendant in its 1962 through 1967 Annual Statements (Section 37-293) as a collateral loan as distinguished from a mortgage loan on real estate; however, such collateral loan was claimed by the Defendant as a qualifying investment for each of the years on the Defendant's license fee statement."

Exhibits A and B attached to the stipulation demonstrate that the mortgages securing the bonds are mortgages of real estate in South Carolina.

The determination of the questions involved in this stipulation turn upon the construction of sub-paragraph "(b)" of Section 37-123, Code of Laws of South Carolina (1962).

That section provides for a reduction of the graded license fee of insurance companies if certain funds are "invested in any or all of the following securities or property, to wit,

"(b) first mortgage bonds of real estate in this State or first mortgage bonds of solvent domestic or domesticated corporations whose improved property is situate entirely within this State and which are owned and controlled independently of foreign corporations and operated entirely within the State."

It is the position of the defendant that two (2) alternatives are provided in this sub-section, and that investment in the securities described in either alternative authorized the reduction. The two (2) alternatives are as follows:

"1. First mortgage bonds of real estate in this State and

"2. First mortgage bonds of solvent domestic or domesticated corporations, etc."

Defendant does not contend that it comes within the provisions of the second alternative as both of the investments

concerned in this stipulation are securities of foreign corporations which do not come within the qualifying terms of the second alternative; defendant does contend, however, that the investments mentioned in the stipulation come within the provisions of the first alternative, that is "first mortgage bonds of real estate in this State."

The plaintiff contends that item (b) of Section 37-123 has a general and a special provision as follows:

"General provision—first mortgage bonds on real estate in this State.

"Special provision—first mortgage bonds of solvent domestic or domesticated corporations whose improved property is situate entirely within this State and which are owned and controlled independently of foreign corporations and operated entirely within the State."

The plaintiff further contends that the "special provision" modifies the "general provision" in such a way that the investments in the stipulation are not to be considered eligible investments.

I have given this matter considerable study, and I am of the opinion that, properly interpreted, the statute provides for two (2) alternatives, and that therefore the defendant must prevail, at least insofar as the Bowaters bonds are concerned. I believe that this is demonstrated by the plain words of the statute and also by its legislative history and the rules of statutory interpretation.

Present Section 37-123 was originally a part of section 14 of Act No. 3 of 1909, and read in its applicable parts as follows:

". . . maintained in and invested in *any or all* of the following securities, or property, to wit: bonds of this State, or of any county, city or town of this State or first mortgage bonds on real estate in this State, or first mortgage bond of solvent domestic corporations, whose property is situate entirely within this State, or any property situate in this State and taxable therein; . . ." (Emphasis added.)

It appears that the statute as originally enacted shows various classes of qualifying investments, each separately stated by the word "or", *any* of which would be authorized as an investment. There is no attempt to set up any special provision in a general statute. Indeed if any of the classes of investments are to be read together, it would place "first mortgage bonds on real estate in this State" in with the class of investments including state, county and municipal bonds. The reason for this would be the punctuation, or lack of it, there being no comma between the word "State" and the word "or".

However, as pointed out in numerous cases, "punctuation is a most fallible standard by which to interpret a writing." *Ewing's Lessee v. Burnet,* 11 Pet. (36 U. S.) 41, 9 L. Ed. 624 (1837). "The presence or the absence of a comma, according to the whim of the printer or proofreader is so clearly fortuitous that it is wholly unsafe as an aid to statutory interpretation." *Erie R. Co. v. United States,* 240 F. 28 (6 Cir. 1917). See also 2 Southerland, Statutory Construction, 3rd Ed. § 4939, pgs. 476-479.

Particularly is it true that punctuation later inserted should not be allowed to change the meaning of the original statute. *McPhail v. Gerry,* 55 Vt. 174 (1882) ; *United States v. York,* 131 F. 323 (C. C. 1904). In such a case, the punctuation may, and should, be disregarded. *United States v. Oregon & C. R. Co.,* 164 U. S. 526, 17 S. Ct. 165, 41 L. Ed. 541 (1896) ; *Fithian v. St. Louis & S. F. Ry. Co.,* 188 F. 842 (C. C. 1911) ; *United States v. Eight Packages and Casks of Drugs,* 5 F. (2d) 971 (D. C. 1910) ; *Noyes v. Marston,* 70 N. H. 7, 47 A. 592 (1899) ; *Howard Savings Institution v. Newark,* 63 N. J. L. 65, 42 A. 848 (1899) ; *Trustees v. White,* 48 Ohio St. 577, 29 N. E. 47 (1891).

This rule is particularly important here because, as will be seen, the punctuation and division into classes as found in our present Code was never before the legislature at the time

of the passage of the original act or any pertinent amendments thereto.

In any event, as originally written, the statute provided for investments in various alternatives. The words "first mortgage bonds on *real estate* in this State" (emphasis added) obviously mean "bonds (including notes) secured by a first mortgage covering real estate situate in this State." And if the first mortgage covered real estate in this State then it was a qualifying investment whether it was the obligation of an individual, whether resident or non-resident, or a corporation, whether foreign or domestic.

The words "first mortgage bond of solvent domestic corporations, whose property is situate entirely within this State" presumably mean bonds of a qualifying corporation secured by a first mortgage covering personal property, or real and personal property. Thus a corporate financing secured by a first mortgage on "all assets" would qualify if the corporation qualified even though the mortgage did not cover any real estate in South Carolina. It was obviously intended to provide a market for corporate type financing for domestic corporations, but it did not qualify or limit the previous category so far as mortgages on real estate in South Carolina were concerned.

This section was incorporated in the Code of 1912 as Section 2702 with no change in the wording. In 1914 the section was amended by Act 249, to read as follows:

". . . invested in any or all of the following securities or property, to wit: Notes or bonds of the State of South Carolina or of counties or municipalities of the State or of subdivisions thereof; or first mortgage bonds of real estate in this State; or first mortgage bonds of solvent domestic or domesticated corporations whose improved property is situate entirely within this State and which are owned and controlled independently of foreign corporations and operated entirely within the State; or average daily balance on depos-

its in banks of this State maintained continuously for six months next preceding date of such return; or any property situate within the State and returned for taxes therein, at the value at which it is returned, . . ."

The section as amended in 1914 was well drafted and punctuated and obviously set up five alternatives or categories of authorized investments each being separated from the others by a semicolon and an "or". It does not appear that the change from "on" to "of" in the real estate first mortgage category has any practical significance, though it may have served to confuse later amenders and codifiers.

The change in the corporation bond category was obviously intended to "tighten up" the requirement for investments in corporate type financing to genuine South Carolina corporations. The thrust of the amendment was to prevent foreign corporations from receiving the benefit of this source of investment money unless it was going to benefit South Carolina either by being a true South Carolina corporation or by (through the previous category) aiding South Carolina real estate.

The section remained the same and was included without change in the 1922 Code (§ 4067), the 1932 Code (§ 7948), and the 1942 Code (§ 7948).

In 1947 there was a general repeal of all existing insurance laws of the State and the enactment of an "Insurance Code" for the State. This was done by Act No. 232 of 1947. Section 39 of that Act contained the provisions in question, and it reads exactly the same as the previous Code Sections, except that certain semicolons were changed to commas, as follows:

". . . invested in any or all of the following securities or property, to wit: Notes or bonds of the State of South Carolina or of counties or municipalities of the State or of subdivisions thereof; or first mortgage bonds of real estate in this State, or first mortgage bonds of solvent domestic or domesticated corporations whose improved property is situ-

ate entirely within this State and which are owned and controlled independently of foreign corporations and operated entirely within the State, or average daily balance on deposits in banks of this State maintained continuously for six months next preceding date of such return; or any property situate within the State and returned for taxes therein, at the value at which it is returned, . . ."

So far as pertinent here, the statute remained the same thereafter until its codification in the 1952 Code as Section 37-123. There certain semicolons were changed to commas, certain commas were omitted entirely, and for the first time letters surrounded by parentheses were inserted setting off various of the alternatives or categories. Why these changes were made is unknown, but certainly there should have been no question of changing the legislative intent. If the change in punctuation would require a change in meaning, then it should be disregarded. 50 Am. Jur. Statutes, S453, p. 469; *Hammock v. Farmers Loan & T. Co.,* 105 U. S. 77, 26 L. Ed. 1111 (1881).

In any event Section 37-123 in the 1952 Code remained unchanged in the 1962 Code, and now reads as follows:

". . . invested in any or all of the following securities or property, to wit, (a) notes or bonds of this State or of counties or municipalities of this State or subdivisions thereof, (b) first mortgage bonds of real estate in this State or first mortgage bonds of solvent domestic or domesticated corporations whose improved property is situate entirely within this State and which are owned and controlled independently of foreign corporations and operated entirely within the State, (c) average daily balance on deposits in banks of this State maintained continuously for twelve months next preceding the date of the return or (d) any property situate within the State and returned for taxes therein, at the value at which it is returned, . . ."

It appears that the statute as now codified still means the same thing that it always did, and that a bond secured by a

first mortgage on real estate situate in South Carolina is still a qualifying investment. In spite of the additions of the letters in parentheses, the word "or" is still there and still designated an alternative.

As the Court said in *Brewer v. Brewer*, 242 S. C. 9, 129 S. E. (2d) 736, 738 (1963):

". . . The word 'or' used in a statute is a disjunctive particle that marks an alternative. *Ohio Fuel Supply Co. v. Paxton*, D. C., 1 F. (2d) 662. The word 'or' used in a statute imports choice between two alternatives and as ordinarily used, means one or the other of two, but not both. *Marshall Field & Co. v. Freed*, 191 Ill. App. 619; *White v. Atchison T. & S. F. Ry. Co.*, 125 Kan. 537, 265 P. 73, 59 A. L. R. 749; *Swift & Co. v. Bonvillain*, 139 La. 558, 71 So. 849.

"In *Huckabee Transport Corporation v. Western Assurance Co.*, 238 S. C. 565, 121 S. E. (2d) 105, this Court said:

" '. . . The word "or" as it is used in the insuring agreement, is a co-ordinating conjunction introducing an alternative. *Bordelon v. National Life & Accident Ins. Co.*, La. App., 187 So. 112; *Erie R. Co. v. American Auto Ins. Co.*, 36 N. J. Super. 159, 114 A. (2d) 873. In *Houge v. Ford*, 44 Cal. (2d) 706, 285 P. (2d) 257, it was held that the function of the word "or" in a contract is to mark an alternative such as "either this or that".'

"In the case of *In re Cow Castle Drainage Dist. (Berry, et al. v. Ammons, et al.)*, 107 S. C. 310, 92 S. E. 1036, we find the following:

" ' "It is not permitted to interpret what has no need of interpretation. When an act is expressed in clear and precise terms, when the sense is manifest and leads to nothing absurd, there can be no reason not to adopt the sense which it naturally presents. To go elsewhere in search of conjectures in order to restrain or extinguish it is to elude it." Potters-Dwarris, p. 143.'

" 'Or' generally indicates an alternative corresponding to 'either', as 'either this or that'; that is to say either one or

another. *Shepard v. City of New Orleans*, 51 La. Ann. 847, 25 So. 542; *Kuehner v. City of Freeport*, 143 Ill. 92, 32 N. E. 372, 17 L. R. A. 774."

It appears that the principle announced in the *Brewer* case is applicable here and that the word "or" is used in its ordinary sense as a disjunctive article denoting an alternative, and that, as stated in the statute, investment "in any or all" of the alternatives would qualify.

It is true that the Supreme Court has stated in *State of S. C. v. Life Ins. Co. of Georgia*, 254 S. C. 286, 175 S. E. (2d) 203 (1970), that, this being an exemption statute, it must be construed strictly and that "statutory language creating exemptions from taxation will not be strained or liberally construed in favor of the taxpayer." But this rule of strict construction merely means giving plain words their plain meaning.

"Rules of interpretation are resorted to for the purpose of resolving ambiguities, not for the purpose of creating them. *Railroad Commission of State of Wis. v. Chicago, B. & O. Railroad Co.*, 257 U. S. 563, 42 S. Ct. 232, 66 L. Ed. 371." *Shirah v. United States*, 158 F. Supp. 40 (D. C. 1957).

The plaintiff is attempting to create ambiguity where there is none, by saying that, rather than simple alternatives, the statute contains a general provision later restricted by a special provision. Under the plaintiff's interpretation the subparagraph would be required to read, in effect, as follows:

". . . investment in (b) first mortgage bonds of real estate in this State, but if the first mortgage bonds are given by a corporation, then the corporation must be a solvent domestic or domesticated corporation whose improved property is situate, . . . etc., . . ."

Such an interpretation would completely fail to give any effect to the words "any or all" in the statute, which obviously mean that investment in "any or all" of the alternatives mentioned qualify for the reduction.

A reading of the cases cited by the plaintiff indicates that the principle involved in those cases is not truly applicable here. The case of *Barnwell Bros. v. South Carolina State Hy. Dept.,* 17 F. Supp. 803 (D. C. 1937) holds that the power given in Section 204 of the Federal Motor Carrier Act of 1935 to establish requirements with respect to safety of equipment does not include the power to regulate size and weight of vehicle where that subject is specifically dealt with in Section 225 of the Act. *State ex rel. Lyon v. Bowden,* 92 S. C. 393, 75 S. E. 866 (1912), relates to the appointment of magistrates, and, while it does cite the rule referred to, it merely holds that "until their successors are appointed and qualified" does not render a term so indefinite as not to be for a specified period. *State v. Lewis,* 141 S. C. 207, 139 S. E. 386 (1927), related to the question of whether the word "receive" included assenting to, or having knowledge of, the receipt of a deposit; the fact that "receive" was later given special treatment was held to show that they were not included.

These cases illustrate that the correct use of the rule is not to avoid plain language, but to try to ascertain the intention of the legislature by giving effect to all the language in the statute, if possible.

"These rules are not the masters of the courts but merely their servants to aid in ascertaining the legislative intent." *Reiche v. Smythe,* 13 Wall. 162, 80 U. S. 162, 20 L. Ed. 566 (1872).

The true use of the rule is stated in *Smith v. South Carolina State Highway Commission,* 138 S. C. 374, 136 S. E. 487 (1927), quoted in *State v. Lewis, supra:*

". . . the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; *but to the extent of any necessary repugnancy between them, the special will prevail over the general statute . . .*"

There is no repugnance between the provisions of the statute in question and therefore it is not necessary to apply the rule sought by plaintiff.

Section 367 of 50 Am. Jur., Statutes, concerning the rule cited by plaintiff as to the effect of general and special provisions reads as follows:

"The general rule is, of course, applicable only as an aid in ascertaining and giving effect to the legislative intent; positive and explicit provisions, comprehending in terms a whole class of cases, are not to be restrained by applying to those cases an implication drawn from subsequent words, unless that implication be very clear, necessary, and irresistible. The rule cannot be applied where the effect will be to override and render almost useless express words in the statute."

To adopt the construction prayed for by plaintiff would require the restraining and overriding of explicit and express words of the statute, namely "first mortgage bonds of real estate in this State" by saying that some such first mortgage bonds are not eligible investments. Surely such an interpretation is not "clear, necessary and irresistible."

To the contrary it appears clear, necessary and irresistible that where a statute says "any or all" it means what it says, and that where it provides alternatives each of the alternatives is available as a choice. Therefore, where one of the alternatives provided is "first mortgage bonds of real estate in this State", then such mortgage bonds are authorized investments.

As shown by the Stipulation both of the investments described are first mortgage bonds of real estate in South Carolina and therefore they are eligible investments.

The next question involves only the Nelson loan.

The Plaintiff contends that when Defendant made this loan it did not make an investment in a first mortgage bond within the meaning of the statute. The Defendant contends

that the note and mortgage of El Rancho Corporation is a "first mortgage bond (or note)" as used in the statute, and that Defendant, having made a loan of money secured by an assignment of such first mortgage bond, has "invested" in such first mortgage bond. Defendant argues that this, of course depends upon the meaning of the word "invested" as used in the statute. This contention appears to conflict with Defendant's agreement regarding the facts as stated in the Stipulation in that the Stipulation states that there has been an "Investment in note of Jack W. Nelson and Novie M. Nelson in the principal amount of $200,000 dated March 18, 1959."

Defendant argues it is unquestionably the general rule that, unless otherwise restricted in meaning by the terms of the statute, the words "invested" and "investment" include money lent as well as money spent. In support of this argument Defendant cites certain cases, to wit: *Genessee Trustee Corp. v. Smith,* 102 F. (2d) 125 (6 Cir. 1939); *Drake v. Crane,* 127 Mo. 85, 29 S. W. 990, 27 L. R. A. 653, 658 (1895); *Blue River Sawmills, Ltd. v. Gates,* 225 Or. 439, 358 P. (2d) 239, 254; *Whittemore Homes, Inc. v. Fleishman,* 190 Cal. App. (2d) 554, 12 Cal. Rptr. 235, 236; *Colorado Sav. Bank v. Evans,* 12 Colo. App. 334, 56 P. 981; *Shoemaker v. Smith,* 37 Ind. 122, and *Brown v. Cummins Distilleries Corp.,* D. C., 53 F. Supp. 659.

The cited decisions do not persuade me that Defendant should prevail insofar as the Nelson loan is concerned. I feel that a helpful decision is *Prudence Realization Corporation v. Atwell, et al.,* 264 App. Div. 546, 35 N. Y. S. (2d) 1001. Here the El Rancho note, secured by the El Rancho mortgage, has been pledged to secure the Nelson note owned by Defendant. In *Prudence* there was a pledge of bonds secured by first mortgages as security for bonds owned by Empire Trust Company, as Trustee. The question there, as pertinent here, was whether this constituted "mortgage investments" within statutes relating to trust indentures and interest

therein. The Court answered this question in the negative and stated as follows:

"Empire Trust Company, as trustee, under the new indenture was not in any sense a mortgagee but rather a pledgee of the collateral which had been given as security for the new bonds. (Page 1004.)

"Surely the property which was pledged here cannot come within the purview of mortgage investment as defined in subdivision 1 of section 125 of the Act; . . ." (Page 1005.)

Defendant has described this loan as a collateral loan as distinguished from a mortgage loan on real estate. See the last paragraph in the Stipulation. I think its description as a collateral loan is a correct description.

When Defendant made this loan I feel that it did not make an investment in a first mortgage bond—the type investment required by item (b) of Section 37-123. Instead Defendant made a loan (1959) which is secured by the El Rancho note (executed in 1956) which in turn is secured by the El Rancho mortgage (executed in 1956). Defendant does not have a lien on South Carolina real estate as security for the Nelson loan. Rather, Defendant has a security interest in the El Rancho note which is secured by the El Rancho mortgage. Defendant is not a real estate mortgagee. Rather, it is a pledgee or secured party and it will never obtain title to the El Rancho note which is secured by the El Rancho mortgage unless and until there has been a default under the Nelson loan and Defendant has purchased the El Rancho note at a public sale. See Uniform Commercial Code—Secured Transactions—Volume 2A of the South Carolina Code—Sections 10.9-102(2) and 10.9-504(3).

After carefully considering this matter I am of the opinion that the Plaintiff must prevail insofar as the Nelson loan is concerned and the Defendant must prevail insofar as the Bowaters Bonds are concerned.

It is therefore ordered—

1. That the Bowaters bonds are eligible investments under item (b) of Section 37-123 and

2. That the Nelson loan is not an eligible investment under item (b) of Section 37-123.